### MING et al. v. CORBIN.

*(Supreme Court, General Term, First Department. June 29, 1892.)*

CONTRACTS—PERFORMANCE—SEVERANCE—QUESTION FOR JURY.

> Where plaintiffs, having sold county bonds and warrants, did not deliver the warrants, through a misunderstanding as to their acceptability, and from the letters and telegrams sent pending the transaction, and defendant's payment of part of the price of the bonds, it might have been found that he consented to a severance of the contract, though he insisted on the delivery of the warrants, in an action for the balance due on the bonds, the court erred in dismissing the complaint on the ground that plaintiffs had not performed the entire contract; the question of its severance being one for the jury.

Appeal from circuit court, New York county.

Action by John H. Ming and another against Austin Corbin. From a judgment dismissing the complaint, and an order denying a motion for a new trial, plaintiffs appeal. Reversed.

For decision reversing a judgment rendered in favor of plaintiffs on former appeal, see 10 N. Y. Supp. 641.

Argued before VAN BRUNT, P. J., and O'BRIEN and PATTERSON, JJ.

*Morgan & Worthington*, (*C. N. Morgan* and *Sydney Ward*, of counsel,) for appellants. *W. J. Kelly*, for respondent.

VAN BRUNT, P. J. · We have searched the record in vain for any authority upon the part of the clerk to enter a judgment dismissing the complaint in this action upon the merits. In fact the record contains no authority whatever for the entry of any judgment, the minutes of the circuit court being conspicuously absent from the judgment record; and there is nothing certainly in the case which justified the entry of any such judgment; the recital in the judgment being absolutely untrue, that the court at the conclusion of all the evidence ordered the complaint dismissed upon the merits. The record contains no such order or direction.

This action was brought to recover an alleged balance due upon the sale by the plaintiffs to the defendant of certain securities in the month of March, 1872; and the facts developed upon the trial show that the plaintiffs were at said time merchants doing business at Helena, Mont., and that the defendant was a banker in New York city, and that one Sherwood was also engaged in business at Helena, and, being about to visit New York, had a conversation with one of the plaintiffs, in which he was authorized to sell for them $5,000 Lewis and Clarke county bonds, and $5,000 fundable territorial warrants at 85, for which Sherwood was to get a commission of $200. Upon his arrival in New York, Sherwood offered the $10,000 worth of securities to the defendant, and told him they were worth 85, and he said he would take them. Thereupon, on the 6th of March, 1872, Sherwood wrote to Ming, one of the plaintiffs, stating that he had an opportunity to place a limited quantity of county bonds or scrip drawing interest, and also territorial scrip, $5,000 of each. Upon the receipt of this letter, on the 19th of March, 1872, it taking about 11 days for a letter from New York to reach Helena, Mont., the plaintiffs telegraphed to Sherwood as follows: "Will sell $5,000 each of bonds and territorial warrants at 85 for face and interest, and give you $200. If wanted, telegraph." On the 20th of March, 1872, Sherwood telegraphed to the plaintiffs as follows: "Send them. Draw on me ten days." And upon the same day a telegraph was sent, apparently coming from Sherwood: "Send bonds. Cannot use warrants, unless to be bonded in June." Thereupon, on the same day, the plaintiffs wrote to Sherwood, acknowledging the receipt of the two telegrams, and stating that they would ship the $5,000 bonds the next night, and that all territorial warrants issued prior to December 1, 1871, under which head theirs came, were to be bonded in June at 12 per cent. interest, and then stated further that they would not ship the territorial warrants until they heard further from him, and that he could be allowed but $100 for the sale of the bonds alone. On the 21st of March the bonds were shipped; and on the 9th of April, prior to their arrival, the defendant telegraphed to the plaintiffs: "Send the $5,000 territorial warrants. County bonds not yet arrived." A day or two prior to the 13th of April, the bonds were received by the defendant, who upon said day wrote a letter to the plaintiffs, acknowledging their receipt, and expressing his surprise that they were 12 per cent. and not 15 per cent. securities, and stating that they were not as good by $7\frac{1}{2}$ per cent. as those which he had purchased, but that he had sold them, and placed to the plaintiffs' credit the sum of $4,400, which was subject to their draft at sight, etc., and concluding the letter with a statement that "without anybody being particularly to blame, and under all the circumstances, I am willing to do my part to harmonize, so that no one will be very much the loser, and all be content; and to this end I will say to you, if you will discount $100 from the amount as you state it, including a doubtful item of interest of $36.77, making net $4,341.77, and call the bonds very well sold at that,—as I know they are,—I will be satisfied, and try to make up the deficiency on something else." As a postscript to this letter, the following paragraph appears: "I received your letter as to territorial warrants, and ordered them forwarded by telegram some days ago." Prior to the receipt of the telegram of April 9th, it would appear that the plaintiffs had sold these

warrants in Helena. In answer to said telegram, on the 10th of April, a letter was written by the plaintiffs to the defendant, which was received by the defendant on the 22d of April, 1872, which, however, does not appear in the record; and the defendant thereupon telegraphed to the plaintiffs: "I have sold the territorial warrants, and must insist upon delivery." And the next day, he wrote the plaintiffs to the effect that he was a good deal surprised to get their letter of the 10th, and that he had immediately telegraphed them as above stated; that he purchased the bonds and warrants from Sherwood, who acted under their telegram. He stated that he took 12 per cent. bonds, and made no words about it, notwithstanding that he expected to have and purchased 15 per cent. bonds; that he was bound to take the warrants under the contract with Sherwood, and he could not see why they were not bound to deliver them, and he could not consent that it should be otherwise. On the 29th of April, 1872, the plaintiffs wrote to the defendant, acknowledging the receipt of said letter of April 13th, in which they stated that in view of the fact that Sherwood's telegram stopped the shipment of the territorial warrants, a portion of which "you could have used (as it afterwards seemed) to good advantage, and that the transaction was conducted by you without any profit; we accept the change." The territorial warrants were never delivered. Upon this state of facts, the court dismissed the complaint upon the ground that the contract for the delivery of the bonds and warrants was one contract, and it had not been fulfilled upon the part of the plaintiffs. The plaintiffs asked to go to the jury upon the question as to whether the defendant had not agreed to the severance of the original contract, and whether he had not agreed to accept and receive the bonds without regard to the territorial warrants, which request was refused, and to such refusal an exception was taken, and the complaint dismissed; and from the judgment thereupon entered, this appeal is taken.

Upon the previous trial of this case, the same state of facts was presented to the court, and the court held as matter of law that the receipt of the bonds was a severance of the contract, and submitted the question to the jury as to the damage which the defendant sustained in consequence of the failure of the plaintiffs to furnish him with the $5,000 warrants. An appeal having been taken to the general term of this court, from an examination of the opinion of the court, it would appear that the learned judge who wrote the opinion was under a misapprehension of the precise extent of the ruling upon the previous trial, because it states in the opinion that the learned justice presiding arrived at the conclusion, and so ruled, that the receipt of the bonds was a severance of the contract, and that the defendant had no cause of action for the warrants. 10 N. Y. Supp. 641. It would appear that the learned judge was laboring under an erroneous impression as to the last proposition mentioned, because the question as to the damage sustained by the nondelivery of the warrants was submitted to the jury, and therefore the court could not have held that the defendant had no cause of action because of the nondelivery of the warrants. The learned judge further called attention to the facts going to show that there was not a severance of the contract or an abandonment upon the part of the defendant of any portion of the original contract; and because the court held, as matter of law, that there had been a severance, the judgment was reversed. We do not think that this decision went to the extent of determining, as far as the question of severance was concerned, that there was no question whatever for the jury. It simply held that, as, upon the conceded facts, different inferences might be drawn, the court should not dispose of the question as matter of law. From certain portions of the correspondence, it would seem as though there was an intention upon the part of the defendant to treat the contract as severed; and from other portions, it would appear as though he was treating the contract as still an entire contract, and insisting upon its performance. Under these circum-

stances, the question as to whether there had been a severance of this contract was one which the jury should have been allowed to pass upon, as, in view of this correspondence, it cannot be held, as matter of law, that there was no severance, because the jury might very well conclude that it was the intention of the parties that the two classes of securities should be treated upon different bases, notwithstanding the fact that the contract originally was an entire one. It would therefore seem to have been error to have refused to submit the question to the jury, as to whether or not there had been a severance. The judgment should be reversed, and new trial ordered, with costs to appellants to abide event. All concur.